```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS

CHARLES MATTEO,                    )
                                   )
          Plaintiff,               )    CIVIL ACTION NO.
                                   )    11-11191-DPW
                                   )
     v.                            )
                                   )
HITACHI GLOBAL STORAGE             )
TECHNOLOGIES, INC.                 )
                                   )
          Defendant,               )
```

MODIFIED[*] MEMORANDUM AND ORDER
November 18, 2013

### I. BACKGROUND

Hitachi Global Storage Technologies, Inc. hired Charles Matteo in October 2008 as a sales manager for its Eastern region. Barely a year later, Hitachi fired Mr. Matteo. While Hitachi claims that it terminated Mr. Matteo for performance-related reasons, Mr. Matteo contends that it was because of his age. Mr. Matteo has sued Hitachi asserting claims of age discrimination and retaliation. Hitachi has moved for summary judgment.

*A.   Factual Background*

The facts taken in the light most favorable to Mr. Matteo appear from the record as follows.

Hitachi is an electronic storage technology company and a producer of hard disk drives. In or about August 2008, Mr.

---

[*]The modifications contained herein are specifically identified in the Errata Sheet entered today as Docket No. 48.

-1-

Matteo applied to Hitachi for a position as a sales representative.  Mr. Matteo was interviewed for a position by Robert Barbeau and Louis Llamas of Hitachi.  Mr. Barbeau had a positive impression of Mr. Matteo during the interview and Mr. Matteo was hired as an Eastern Regional Sales Manager in October 2008.  The decision to hire Mr. Matteo was made by Mr. Barbeau.[1]  At the time that he was hired, Mr. Matteo was fifty-six years old.

During his employment with Hitachi, Mr. Matteo worked as part of the Channel Sales group, which was responsible for sales to retail distributors.  At the time he was hired, Mr. Matteo was one of five sales representatives in the Channel Sales group, three of whom were over fifty.  Mr. Barbeau, who supervised the Channel Sales group, was forty-nine years old at the time of Mr. Matteo's termination.  One of the five sales representatives was terminated by Hitachi during Mr. Matteo's employment.  That employee was twenty-nine years old at the time of his termination.

In April or May 2009, shortly after the close of the first quarter of 2009, Mr. Barbeau began expressing concerns about Mr. Matteo's sales performance; Mr. Matteo's quarterly sales for 2009 were below the corresponding figure for his predecessor in 2008.

---

[1] Although Mr. Matteo disputes this fact, he has offered no evidence to contradict Mr. Barbeau's deposition testimony stating that he made the decision to hire Mr. Matteo.

To address his concerns, Mr. Barbeau, in conjunction with Hitachi's human resources department, began to develop a Performance Improvement Plan ("PIP") for Mr. Matteo.  During the summer of 2009, Mr. Barbeau traveled to Mr. Matteo's territory to accompany Mr. Matteo on customer visits and provided coaching over the phone.  By August, Mr. Barbeau had expressed his concerns about Mr. Matteo to Jonathan Smith, who recently had been hired to replace Mr. Llamas and was Mr. Barbeau's manager.

In a September 2009 internal human resources assessment, Mr. Barbeau described Mr. Matteo as "behind" in meeting nearly all of his annual performance objectives and wrote that Mr. Matteo "continue[d] to struggle with growing [Hitachi's] business in the Eastern region."  In that interim assessment, Mr. Barbeau set goals for new customer sales growth.  In response to a request from Mr. Barbeau (and to Mr. Barbeau's concerns about sales growth), Mr. Matteo also put together a sales plan and forecast for his region for the third and fourth quarter of 2009.  Mr. Matteo did not meet either the sales goals set forth in the interim assessment or those that he set for himself.

On October 23, 2009, Mr. Barbeau placed Mr. Matteo on a formal 45-day PIP which had been approved by Hitachi's human resources representative, Hitachi's legal team, and Mr. Smith.  That PIP described specific areas of concern, including lack of growth in sales and communications issues, and set specific sales

goals.  At the end of the 45-day period, Mr. Matteo had not met the sales objectives set forth in the PIP.  In a December 16, 2009 memorandum to Mr. Smith, Mr. Barbeau documented his continued concerns regarding Mr. Matteo's performance and the results of the PIP, and recommended that Mr. Matteo be terminated.  Human resources, as well as Mr. Smith and a supervisor of Mr. Smith, Jerald Kagele, approved the termination on December 17, 2009 and Mr. Matteo was fired the following day.  Neither Mr. Barbeau, Mr. Smith, nor Mr. Kagele knew Mr. Matteo's age at the time he was fired.  Following Mr. Matteo's termination, Michael Bates, Mr. Matteo's predecessor, who had recently been rehired by Hitachi, took over the Eastern Region.  Mr. Bates was 51 years old at the time he took over the Eastern Region following the termination of Mr. Matteo.

Although Mr. Matteo does not dispute that he fell short of the benchmarks set by Mr. Barbeau during his tenure, he contends that his failure to meet the various goals and targets was through no fault of his own.  At the time that Mr. Matteo was hired, there were no individual sales quotas, rather there was a team quota--which Mr. Matteo's team met or exceeded.  When Hitachi set individual sales goals, the sales goals it set were, according to Mr. Matteo, simply impossible to achieve.

In addition, Mr. Matteo contends that Hitachi and Mr. Barbeau hindered his sales efforts in several ways.  Mr. Barbeau

placed restrictions on Mr. Matteo's travel--limiting the geographic scope of his sales efforts and precluding him from visiting certain customers.  Hitachi had difficulty providing adequate and reliable supplies of products, limiting Mr. Matteo's ability to sell those products to retailers.  During Mr. Matteo's tenure, his sales efforts were further slowed by the transition from the "Gemini" generation of drives to the newer "Jupiter" drives.  In addition, Hitachi placed restrictions on Mr. Matteo's sales to certain customers, based upon competitiveness or pricing concerns.  In short, Mr. Matteo contends that he was set up to fail by being given unattainable goals and hamstrung by restrictions imposed by his employer.

### B.   *Procedural Background*

Mr. Matteo initially filed the instant complaint against Hitachi in Massachusetts Superior Court in Middlesex County on June 15, 2011 and served it upon the defendant the following day.  On July 6, 2011, Hitachi removed the case to this Court pursuant to 28 U.S.C. §§ 1332(a), 1441 and 1446.

Mr. Matteo's complaint asserts two counts against Hitachi: (1) a claim for age discrimination in violation of Mass. Gen. Laws. c. 151B; and (2) a claim for retaliation under Mass. Gen. Laws. c. 151B.  Hitachi has moved for summary judgment on both counts.

## II. STANDARD OF REVIEW

Fed. R. Civ. P. 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The question is whether, viewing the facts in the light most favorable to the nonmoving party, there is a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *Casas Office Machines, Inc. v. Mita Copystar Am., Inc.*, 42 F.3d 668, 684 (1st Cir. 1994).

In the context of discrimination cases, summary judgment is a "disfavored remedy" because "the ultimate issue of discriminatory intent is a factual question" and the "question of the defendants' state of mind is elusive and rarely is established by other than circumstantial evidence." *Blare v. Husky Injection Molding Systems Boston, Inc.*, 646 N.E.2d 111, 114 (Mass. 1995). Nevertheless, summary judgment is appropriate where "the plaintiff's evidence of intent, motive, or state of mind is insufficient to support a judgment in plaintiff's favor." *Id.*

## III. ANALYSIS

### A. *Legal Framework*

Massachusetts law makes it unlawful

> For an employer in the private sector, by himself or his agent, because of the age of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment, unless based upon a bona fide occupational qualification.

Mass. Gen. Laws. c. 151B § 4.1B.

In an age discrimination lawsuit, the plaintiff bears the ultimate "'burden of proving that his years were the determinative factor in his discharge, that is, that he would not have been fired but for his age.'" *Mesnick* v. *General Elec. Co.*, 950 F.2d 816, 823 (1st Cir. 1991) (quoting *Freeman* v. *Package Mach. Co.*, 865 F.2d 1331, 1335 (1st Cir. 1988)).  Where, as here, there is no direct evidence of age discrimination, the case is evaluated according to the burden-shifting standard articulated by the United States Supreme Court in *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-805 (1973).  *See Blare*, 646 N.E.2d at 114 (applying *McDonnell Douglas* standard to claims arising Chapter 151B).

Under the *McDonnell Douglas* standard, the initial burden is placed upon the plaintiff to set forth a *prima facie* case sufficient to support an inference of age discrimination by showing he (1) is a member of a protected class--here an individual above the age of forty; (2) met his employer's legitimate job performance expectations; (3) experienced an adverse employment action; and (4) was replaced by a person with

roughly equivalent job qualifications.  *Goldman* v. *First Nat'l Bank of Boston*, 985 F.2d 1113, 1117 (1st Cir. 1993).  This *prima facie* burden "is not onerous[;] all that is needed is the production of admissible evidence which, if uncontradicted, would justify a legal conclusion of discrimination." *Brennan* v. *GTE Gov. Sys. Corp.*, 150 F.3d 21, 26 (1st Cir. 1998) (citations and internal quotation marks omitted).

Establishment of a *prima facie* case creates a presumption that the employer engaged in impermissible age discrimination. *See Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 254 (1981).  To rebut this presumption, however, an employer need only "articulate a legitimate nondiscriminatory reason for the employee's termination." *Lawrence* v. *Northrup Corp.*, 980 F.2d 66, 69 (1st Cir. 1992) (citations omitted).  "[A]n employer must not only give a lawful reason or reasons for its employment decisions but also must produce credible evidence to show that the reason or reasons advanced were the real reasons." *Wheelock College* v. *Massachusetts Comm'n Against Discrimination*, 355 N.E.2d 309, 314 (Mass. 1976).

Once a defendant articulates a nondiscriminatory reason for the challenged action, the proceedings reach the third stage of the *McDonnell Douglas* analysis.  At this stage, Massachusetts and federal law were once thought to diverge, but the First Circuit has said they "are now generally aligned on the pretext issue."

*Fite* v. *Digital Equipment Corp.*, 232 F.3d 3, 7 (1st Cir. 2000). *See also Joyal* v. *Hasbro*, 380 F.3d 14, 17 (1st Cir. 2004) (Massachusetts law may be friendlier to plaintiffs than federal law in that "a plaintiff may be able - automatically and regardless of circumstances - to avoid a directed verdict and reach a jury if he or she proves at least one of the reasons given by the defendant was pretextual."). Federal law requires a plaintiff to show both that the reason proffered by the defendant is pretextual and that the true reason for the challenged employment action was discriminatory. "Title VII does not award damages against employers who cannot prove a nondiscriminatory reason for adverse employment action, but only against employers who are proven to have taken adverse employment action by reason of [a protected category]. That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason ... is correct." *St. Mary's Honor Center* v. *Hicks*, 509 U.S. 502, 523-524 (1993). *See also Reeves* v. *Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 148 (2000) ("a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.").

Under Massachusetts law, it may be sufficient if the plaintiff shows that the articulated reason is a pretext. "If a

plaintiff establishes a *prima facie* case, but the defendant [employer] answers it by advancing lawful grounds for the action taken and produces evidence of underlying facts in support thereof, the plaintiff, in order to prevail, must persuade the fact finder by a fair preponderance of the evidence that the defendant's asserted reasons were not the real reasons for the action." *Brunner* v. *Stone & Webster Eng'g Corp.*, 603 N.E.2d 206, 208 (Mass. 1992) (citations omitted).  Where the evidence shows that the employer's professed reason for termination is false, the fact finder "may (but need not) infer that the employer is covering up a discriminatory intent, motive or state of mind." *Lipchitz* v. *Raytheon Co.*, 751 N.E.2d 360, 368 (Mass. 2001).  The burden of proof, however, rests at all times with the plaintiff. *Wheelock*, 355 N.E.2d at 138.

### B.   Mr. Matteo Cannot Establish a Prima Facie Case

Mr. Matteo, who was 57 years old when he was fired from his job at Hitachi, easily satisfies the first and third prongs of the *prima facie* test, which require only that the plaintiff be a member of the protected class and experience an adverse employment action.  The second and fourth prongs, however, present insuperable hurdles to his claim.

The second prong requires Mr. Matteo to have met his employer's legitimate job performance expectations.  As described above, Hitachi contends, with evidentiary support, that Mr.

-10-

Matteo failed to meet the sales goals established by his supervisors and was ineffective in growing Hitachi's business in his region. Mr. Matteo counters this by contending that he is an experienced, well-qualified, and successful sales representative and that any shortfalls in his sales figures reflect the limitations imposed by his geographic territory and by Hitachi and Mr. Barbeau's conduct. Moreover, he contends that the sales goals set by Hitachi were not realistic given these constraints.

I cannot find that Mr. Matteo is able to satisfy his burden. To be sure, as explained above, to clear the *prima facie* threshold, Mr. Matteo's burden is one of production, not persuasion. He has, however, produced insufficient evidence to demonstrate that he was satisfying Hitachi's legitimate job performance expectations. Rather, the evidence shows that he did not meet the various sales goals and targets set for him. The expectations to which he was being held may have been more demanding than those in place in the past, but there is nothing inappropriate or illegitimate in establishing and enforcing them.

With respect to the fourth prong, while Mr. Matteo was replaced by another sales representative, his replacement was 51 years old. Establishing a *prima facie* case requires that the plaintiff put forth "evidence adequate to create an inference that an employment decision was based on illegal discriminatory criterion. In the age-discrimination context, such an inference

cannot be drawn from the replacement of one worker with another worker insignificantly younger."  *O'Connor* v. *Consolidated Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).

The First Circuit has ruled that a three-year age difference is not sufficient to support an inference of discrimination, and has strongly suggested that an age gap of five years would also be insufficient, *Williams* v. *Raytheon Co.*, 220 F.3d 16, 20 (1st Cir. 2000), *see also Knight* v. *Avon Products, Inc.*, 780 N.E.2d 1255, 1265 (Mass. 2003) (holding that an age disparity of less than five years is "too insignificant to support a *prima facie* case of age discrimination").  The six-year gap between Mr. Matteo and his replacement presents a borderline case at best.  The inference of age discrimination is further undermined by the fact that there is no evidence that any of the Hitachi decisionmakers--Mr. Barbeau, Mr. Smith, and Mr. Kagele--knew Mr. Matteo's age and by the fact that Mr. Matteo's replacement fell well within the age range of Mr. Matteo's protected class.  Taking this evidence together, Mr. Matteo cannot satisfy the fourth prong of the *prima facie* test.

Because I find that Mr. Matteo cannot meet his burden of production as to the second and fourth prongs, he cannot establish a *prima facie* claim for age discrimination.

In the interest of completeness, however, I will address the next stages of the *McDonnell Douglas* analysis.

### C.  *Hitachi Can Meet Its Burden of Production*

Assuming *arguendo* that Mr. Matteo had made out a *prima facie* case, Hitachi can rebut the presumption of age discrimination by "articulat[ing] a legitimate nondiscriminatory reason for the employee's termination."  *Lawrence*, 980 F.2d at 69 (citations omitted).  Hitachi has certainly done so here with its contentions of Mr. Matteo's inadequate performance, buttressed as they are by significant evidentiary support.  As detailed above, Hitachi has documented that, in his first full quarter, Mr. Matteo did not match the sales figures of his predecessor.  As a result, Mr. Barbeau began supervising Mr. Matteo more closely, including speaking with him regularly, traveling to the East Coast to visit with Mr. Matteo, and setting individual sales goals.  In September, Mr. Barbeau assessed Mr. Matteo as behind in nearly all of his performance benchmarks.  In October 2009, Hitachi placed Mr. Matteo on a performance improvement plan setting objectives for Mr. Matteo going forward.  That PIP made clear that Mr. Matteo was expected to demonstrate improvement over the next forty-five days, and that failure to do so would lead to Mr. Matteo's dismissal.  At the end of the PIP, Mr. Matteo had not met his sales goals.  In addition, he lagged on other metrics set forth by Mr. Barbeau.  Based on this performance, Mr. Barbeau made the decision, in consultation with

his supervisors and Hitachi's human resources department, to terminate Mr. Matteo.

In his memorandum recommending the termination of Mr. Matteo, Mr. Barbeau articulated a legitimate nondiscriminatory reason for Mr. Matteo's termination--Mr. Matteo's failure to achieve growth in the sales of Hitachi drives and his failure to demonstrate a likelihood of achieving such growth in the future. This is sufficient to rebut any *prima facie* case arguably set forth by Mr. Matteo. The ultimate question, therefore, would be whether Mr. Matteo can carry his burden of showing, by a preponderance of the evidence, that the reasons articulated by Hitachi were in fact pretextual and that the actual reason for Mr. Matteo's dismissal is age discrimination.

### D. *Mr. Matteo Cannot Carry His Burden of Persuasion*

To demonstrate that Hitachi's articulated reason for his termination are pretextual, Mr. Matteo contends that the benchmarks set for him were impossible to achieve, that Hitachi hindered his sales efforts, and, in short, that he was set up to fail by his employer.

Mr. Matteo contends that Hitachi restricted his travel during the time that he was on the PIP, preventing him from reaching certain potential customers. In addition, at times during Mr. Matteo's employment, Hitachi was unable to provide a

steady or adequate supply of drives to assure customers that orders would be filled.  Mr. Matteo's efforts were further slowed by the transition from the "Gemini" generation of drives to the newer "Jupiter" drives.  As these new drives were introduced, customers had to have the opportunity to test the new versions before making purchasing decisions, thus slowing any potential sales growth.  Mr. Matteo also testified during his deposition that he was given no support from the company in his sales efforts.

If Mr. Matteo's contentions are correct, this course of conduct might reveal poor management and irrational expectations on Hitachi's behalf.  Anti-discrimination law does not, however, police such conduct.  "Courts may not sit as super personnel departments, assessing the merits-or even the rationality-of employers' nondiscriminatory business decisions." *Mesnick*, 950 F.2d at 825 (citing *Furnco Const. Corp.* v. *Waters*, 438 U.S. 567, 578 (1978) and *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 31 (1st Cir. 1990)).  My task is not to evaluate the "soundness" of Hitachi's decisionmaking, but "but to ensure it does not mask discriminatory animus."  *Sullivan* v. *Liberty Mut. Ins. Co.*, 825 N.E.2d 522, 541 (Mass. 2005).  Here, there is no evidence showing that Mr. Matteo's sales targets and goals were established for anything other than business purposes or that Mr. Matteo was terminated for any reason other than his failure to

meet those performance standards.  Even if Mr. Matteo is correct in his assertions that the standards were set unreasonably high and that Mr. Barbeau's opinions regarding Mr. Matteo's performance were incorrect, this does not demonstrate animus.[2] *See id.* ("[E]ven were we to conclude that [plaintiff] neither mishandled [an important matter] nor was responsible for [other difficulties], these facts do not establish that [defendant's] stated reasons for terminating her were pretextual.").

To the extent that there is evidence that sheds light on the material issues, that evidence indicates there was no discriminatory intent.  First, Mr. Matteo contends that he is

---

[2] Mr. Matteo has pointed to two statements made by Mr. Barbeau as demonstrably false--and so indicative of pretext and animus.  The first is Mr. Barbeau's statement (contained in his summary judgment affidavit) alleging that Mr. Matteo was far behind the other sales persons in getting customers to qualify drives.  Mr. Matteo contends that this statement is contradicted by a Hitachi internal spreadsheet.  There is no evidence, however, concerning who created the spreadsheet, for what purpose, or from what data.  This renders the document ambiguous at best.  Second, Mr. Matteo points to Mr. Smith's notes of a conversation with Mr. Barbeau which state that Mr. Matteo "[i]sn't managing Tiger" and contends that this note indicates that Mr. Barbeau gave Mr. Smith the false impression that Mr. Matteo should have managed Tiger better, but was not doing so, when, in fact, Mr. Matteo had no responsibility for Tiger as a customer.  Setting aside the literal accuracy of the note, however, this evidence is again ambiguous at best.  Mr. Smith testified in his deposition that this was a note of a background conversation during which Mr. Barbeau provided information about Mr. Matteo, including the fact that Mr. Matteo's experience and skills were in sales to manufacturers rather than to retailers. These incompletely developed and ambiguous pieces of evidence are insufficient on this record to show that Mr. Matteo was fired for pretextual reasons and they do not otherwise demonstrate age-based animus.

young-looking and would be assessed at younger than his actual age.  If this is so, it would reduce any age-related motive for his firing; so far as the record discloses none of the Hitachi decisionmakers knew Mr. Matteo's true age and so, if Mr. Matteo is to be credited, presumably would have believed him younger than fifty-seven.  It appears from the record that Mr. Barbeau, in fact, did not even know whether Mr. Bates, who replaced Mr. Matteo, was older or younger than Mr. Matteo.  Second, Mr. Barbeau was responsible for both the decision to hire and to fire Mr. Matteo.  "In cases where the same individual both promotes and terminates the plaintiff within a short time frame, an inference arises in favor of the defendant and against discriminatory motive."  *Pina* v. *Children's Place Retail Stores, Inc.*, 2013 WL 1091702, at *3 (D. Mass. March 14, 2013).  Finally, Mr. Matteo was one of five sales representatives in the Eastern Region.  Three of those sales representatives were over the age of fifty.  One of the five sales representatives, who was 29 years of age, was terminated by Hitachi during the time Mr. Matteo was employed.  This pattern shows that employment and termination decisions were made with indifference to age.

   While Mr. Matteo may disagree with the reasons that Hitachi has given for his termination, and while he may be correct that Hitachi set impossible objectives, created a situation in which Mr. Matteo was bound to fail, and by doing so acted unfairly,

there is simply no evidence that Hitachi's stated reasons for terminating Mr. Matteo were pretextual or motivated by discriminatory animus and, accordingly, summary judgment must be entered in favor of Hitachi on Mr. Matteo's age discrimination claim.

### D.   *Mr. Matteo's Retaliation Claim*

In addition to a claim for discrimination, Mr. Matteo has asserted a claim for retaliation under Massachusetts Gen. Laws c. 151B.  Section 4 of Chapter 151B makes it unlawful for an employer to retaliate against an employee for opposing discriminatory practices, or for filing a complaint or otherwise participating in a proceeding under Chapter 151B.  Mr. Matteo has not identified any protected conduct for which he has been retaliated against by Hitachi and, indeed, does not appear to oppose Hitachi's motion for summary judgment on the retaliation claim.  Consequently, I will grant summary judgment in favor of Hitachi on the retaliation claim.

### IV.   CONCLUSION

For the reasons set forth more fully above, defendant's motion for summary judgment is GRANTED, and the Clerk is directed to enter judgment for the defendant.

*/s/ Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE